**EAST CENTRAL OKLAHOMA ELECTRIC COOPERATIVE, INC., Appellant,**

v.

**OKLAHOMA GAS AND ELECTRIC COMPANY, a corporation, Appellee.**

**No. 44608.**

Supreme Court of Oklahoma.

Jan. 16, 1973.

Bailey, Ash & Romine, by K. D. Bailey, Okmulgee, for appellant.

Rainey, Flynn, Welch, Wallace, Ross & Cooper, Oklahoma City, H. Duane Stratton, Oklahoma City, Streeter Speakman, Jr., Sapulpa, Harry M. McMillan, Bristow, for appellee.

HODGES, Justice.

In this appeal, both parties assert their right to the sale and service of electricity to an industrial area where a new industrial plant was built by the United States Carpet Mills, Inc. (Carpet Mills).

Oklahoma Gas & Electric Company (O. G. & E.) plaintiff and appellee herein, asserts its right on the basis the industrial area had been annexed by the city of Bristow where they held a franchise for the sale of electricity within the city limits.

On the other hand, East Central Oklahoma Electric Cooperative, Inc., (East Central) defendant and appellant herein, claim, among other contentions which are not necessary to determine in view of this opinion, that prior to the annexation of this area they had entered into a valid and

enforceable contract with Carpet Mills for the sale and service of electricity which cannot be impaired.

O.G. & E. argues the contract was not executed until after the annexation of the industrial area to the city of Bristow. The effective date of the contract thus forms the focal point of controversy in this appeal.

In 1969, Carpet Mills was in the process of building a plant on the outlying edge of Bristow in an industrial area which had not been annexed. Negotiations had been conducted by Carpet Mills with O.G. & E. and East Central concerning electrical service for the new plant.

The assistant manager of East Central had been given general authority by its board of trustees to enter into new commercial contracts and handle new customers. The board of trustees and general manager of East Central had expressly authorized the assistant manager to negotiate the contract to furnish electricity to Carpet Mills prior to August 1, 1969.

The president of Carpet Mills accepted the contractual terms offered by the assistant manager of East Central in a telephone conversation on August 1, 1969. Their oral agreement was reconfirmed by another telephone conversation between the same parties on August 6, 1969.

The written contract later executed by the parties showed on its face that it was signed by the president of Carpet Mills, and the president and assistant manager of East Central on August 7, 1969. The contract was ratified by the board of trustees of East Central August 11, 1969.

Surveys, including staking of the lines, preparation of engineering data for construction, planning and load analysis were conducted by East Central. The evidence was that the first survey was made July 11, 1969, and that the surveys were completed July 30, 1969. Work was done from July 30, 1969 until December 10, 1969, when at the request of Carpet Mills, East Central began to furnish electricity to the completed plant.

On August 4, 1969, the property on which the Carpet Mills plant was being constructed was annexed by the city council. The emergency clause was attached to the ordinance of annexation which was published August 7, 1969.

O.G. & E. filed a petition requesting a temporary injunction against East Central to restrain it from furnishing electricity to Carpet Mills on January 2, 1970. Upon hearing the matter the trial court enjoined East Central from the sale or service of electricity to Carpet Mills on September 16, 1970.

East Central alleges the contract existed as of the time of the oral agreement on August 1, 1969. O.G. & E. asserts that it was not binding until ratified by the board of trustees of East Central, on August 11, 1969, which was subsequent to the annexation by the City of Bristow.

A corporation is an artificial person, which of necessity must act by and through its agents. Garcia v. Sanco Finance Co., 392 P.2d 51, 52 (Okl.1964). The general manager or whoever may be given immediate direction or control of a corporation organized for commercial purposes is its agent, empowered to do any act the directors may authorize or ratify. Unless he is expressly restricted to the performance of certain specified acts, he may do anything which naturally and ordinarily has to be done to carry out the paramount purpose of the corporation. Barnett v. Kennedy, 185 Okl. 409, 92 P.2d 963, 968 (1939).

Except where it is required by statute or by the articles of incorporation or by-laws of the corporation that the authority of an officer or agent must be conferred in a particular manner, authority to make a particular contract need not necessarily be expressed, but may be inferred from the facts and circumstances of the particular case, as from a course of conduct or dealing by the corporation with its officers and agents. Ardmore Hotel Co. v. J. B. Klein, Iron & Foundry Co., 104 Okl. 125, 230 P. 734, 735 (1924). Park Addition

Co. v. Bryan, 102 Okl. 205, 228 P. 959 (1924).

Although the title of assistant manager implies subordination to the manager and the subjection of authority to limitations imposed by him, he had been given express authority by the board and the manager and had implied authority because of his past conduct in handling new commercial accounts to enter into the contract with Carpet Mills. His actions in conducting negotiations with Carpet Mills were in conformity with the applicable by-laws provisions of East Central.

An officer or agent may ordinarily bind the corporation by his act or contract in its behalf, in the general course of the corporate business and his own employment, without the authority of a formal vote or resolution of the board of directors, especially where the directors are present and order the making of the contract. Authorization by a formal vote or resolution of the directors is not necessary as to contracts which are made in the ordinary administration of the business of the corporation by its managing officers or contracting agents. A general authorization is sufficient. Manchester Mill v. Strong, 231 F. 876 (C.A. 8th Cir. 1916).

In the absence of statutory, charter, or by-law restrictions, a corporation acting within the scope of its legitimate purpose may make, and be bound by its parol contracts to the same extent as an individual. Carlisle v. General Tire Service Co., 86 Ga.App. 807, 72 S.E.2d 568 (1952). Statutes, charters, or by-laws, which merely made reference to written contracts of a corporation, but which do not expressly or impliedly prohibit oral contracts will not operate to invalidate such contracts. St. Joseph Hydraulic Co. v. Globe Tissue Paper Co., 156 Ind. 665, 59 N.E. 995 (1901).

The Oklahoma Business Corporations Act, 18 O.S.1971 § 1.19(5) provides among other powers that a corporation has authority:

"To enter into contracts, incur obligations, and otherwise engage in, transact, and carry on business in this State or elsewhere."

It is provided by the by-laws of East Central that:

"* * * the Board of Trustees may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name and on behalf of the Cooperative, and such authority may be general or confined to specific instances."

Neither the statute nor the by-laws contain mandatory provisions which require that the contract be written. Under Oklahoma law, parties may have binding contract, even though they have an understanding that the agreement should be formally drawn. Where the contracting parties have assented to all the terms of the contract, and they are completely understood in the same way by both parties, mere reference in conjunction therewith of a future contract in writing will not negate the existence of a present contract. Western Contracting Corp. v. Sooner Const. Co., 256 F.Supp. 163, 168 (D.C.W.D.Okl. 1966), Fry v. Foster, 179 Okl. 398, 65 P.2d 1224, 1225 (1937). Western Roofing Tile Co. v. Jones, 26 Okl. 209, 109 P. 225 (1910), 15 O.S.1971 §§ 1, 71.

The fact that the parties may have contemplated the subsequent formal execution of the contract does not necessarily imply that they have not already bound themselves to a definite and enforceable contract the terms of which could only be altered by mutual consent. Pierce Petroleum Corporation v. Hales, 147 Okl. 42, 294 P. 160, 163 (1930).

Western Bank v. Morrill, 245 Or. 47, 420 P.2d 119, 125 (1966), concisely express this principle of law. The Oregon court held that:

"An agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed. If therefore it appears that the minds of the parties have

met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed on, * * * this is an obligatory agreement, which dates from the making of the oral agreement and not from the date of the subsequent writing."

Between the parties, it is usually immaterial that the contract is not executed on the day of its date. Thornton Brothers Inc. v. Gore, 252 Miss. 27, 172 So.2d 425, 429 (1965). It is competent for the parties to agree that a written contract shall take effect as of a date earlier than that on which it is executed. When this is done, the parties will be bound by the agreement. Brewer v. National Surety Corporation, 169 F.2d 926, 928 (C.A. 10th Cir. 1948).

Ordinarily nothing after acceptance is required to make a contract effective. The act of acceptance closes the contract. No formalities are required. It is sufficient if in the course of the transaction the party to be charged in some writing signed by him or his duly authorized agent recognized or ratifies an agreement sufficiently explicit in terms, and disclosed in writings which show they relate to the same transaction. Martin v. Fretwell, 202 Okl. 204, 211 P.2d 529, 533 (1949), Davenport v. Doyle Petroleum Corporation, 190 Okl. 548, 126 P.2d 57, 60 (1942), Rock v. Fisher, 115 Okl. 53, 241 P. 496, 497 (1925).

A corporation, like a natural person, may ratify, affirm, and validate any contract made or done in its behalf which it was capable of making of doing in the first instance. Huston v. City of Miami, 98 Okl. 35, 224 P. 316 (1924).

O.G. & E. alleges that the contract was not valid until August 11, 1969 when it was accepted by the board of trustees of East Central. It further urges that the annexation was valid and effective as of August 7, 1969, and therefore takes precedence over the contract. It is seeking to accomplish by indirection what it could not accomplish by direct competition in the market place.

The meeting of the board of trustees of East Central on August 11, 1969, at which they accepted or ratified the contract was a formality. The board of trustees had expressly authorized the assistant manager to enter into the contract with Carpet Mills. The oral contract reached by telephone conversation on August 1, 1969, was reconfirmed by a subsequent telephone conversation August 6, 1969. The evidence was that both parties agreed that they were bound by the oral agreement on August 1, 1969.

Ratification is the adoption of a contract which relates back to the execution of the contract and renders it obligatory from its inception. East Central's ratification vested contractual rights as of August 1, 1969.

From the foregoing, we hold the contractual rights of East Central and Carpet Mills were vested and their contract legally enforceable at the time of the oral agreement on August 1, 1969. The Statute of Frauds is inapplicable because the agreement was reduced to writing. Kirpatrick v. Jacobson's Lifetime Bldg., Okl., 467 P.2d 489.

Bristow is not a charter city and is therefore governed by the statutes of the state of Oklahoma. It was provided by 11 O.S.1961 § 579.2 now 11 O.S.1971 § 579.2 that:

"All ordinances duly passed by the legislative bodies of cities and towns except as otherwise provided in Section 2 hereof shall be published in a legal newspaper having general circulation in said city or town. Unless published or posted as required by law, same shall be null and void."

An ordinance adopted in compliance with the statute with the emergency clause attached is not effective and in force until it has been published. Chickasha Cotton Oil Co. v. Rogers, 160 Okl. 164, 16 P.2d 112 (1932).

It is therefore unnecessary to examine the validity of the annexation or decide whether East Central can collaterally attack the annexing ordinance for the reason that although the ordinance was passed August 4, 1969, it did not become effective at the earliest until August 7, 1969, which was subsequent to the expressly authorized contract between East Central and Carpet Mills.

The judgment of the Court of Appeals is affirmed on the grounds expressed by this opinion.

All Justices concur.